WO         IN THE UNITED STATES DISTRICT COURT

           FOR THE DISTRICT OF ALASKA


BONNIE ROSE ADAMS,                )
                                  )
                    Plaintiff,    )
                                  )
     vs.                          )
                                  )
COMMISSIONER OF SOCIAL SECURITY   )
ADMINISTRATION,                   )
                                  )        No. 4:18-cv-0042-HRH
                    Defendant.    )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Bonnie Rose Adams has timely filed her opening brief,[1] to which defendant, the Commissioner of the Social Security Administration, has timely responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

On December 22, 2015, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on August 1,

---

[1]Docket No. 14.

[2]Docket No. 15.

-1-

2015.  Plaintiff alleged that she was disabled because of PTSD, depression, anxiety, nerve damage, arthritis, and diabetes.  Plaintiff's applications were denied initially, and plaintiff requested a hearing.  Administrative hearings were held on November 30, 2016, March 22, 2017, August 23, 2017, and February 15, 2018.  An administrative law judge (ALJ) then denied plaintiff's applications.  Plaintiff sought review of the ALJ's unfavorable decision.  On October 31, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 9, 2018 decision the final decision of the Commissioner.  On December 3, 2018, plaintiff commenced this action in which she asks the court to review defendant's final decision.

General Background

Plaintiff was born on September 1, 1958.  She was 56 years old on her alleged onset date.  Plaintiff has a college education.  Plaintiff's past relevant work was as a child protection worker, an outreach worker, a social services aide, a corporate manager, a shareholder relations worker, a youth residential counselor, an office manager, and a cultural teacher/aide.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2019."[3]

---

[3]Admin. Rec. at 14.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since August 1, 2015, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: post-traumatic stress disorder and anxiety disorder. . . ."[6]

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 15.

[6]Admin. Rec. at 15.

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[7] The ALJ considered Listings 12.06 (anxiety and obsessive-compulsive disorders) and 12.15 (trauma- and stressor-related disorders). The ALJ considered the "paragraph B" criteria and found that plaintiff had mild to moderate limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate to marked limitations with regard to concentration, persistence, or pace; and moderate limitations as to adapting or managing oneself.[8] The ALJ also considered the "paragraph C" criteria and found that they had not been met.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had the

> residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following exceptions[:] The claimant can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant should avoid moderate exposure to unprotected heights and hazardous machinery. The claimant is limited to a low stress job with only occasional decision-making and changes in the work

---

[7]Admin. Rec. at 17.

[8]Admin. Rec. at 18.

[9]Admin. Rec. at 18.

setting. The claimant can perform no assembly line work or production rate work. The claimant can have only occasional interaction with the public, occasional interaction with supervisors, and occasional interaction with coworkers with no tandem tasks.[10]

The ALJ found plaintiff's symptom statements less than credible because they were not consistent with the objective findings in treatment notes, because they were not consistent with her daily activities, and because she "worked at the Boys and Girls Home after her alleged onset date[.]"[11]

The ALJ gave little weight[12] to Dr. Thurston-Hicks' opinion.[13] The ALJ gave little weight to Dr. Clifford's March 2017 opinion.[14] The ALJ gave little weight to Dr. Weiss' opinions.[15] The ALJ gave some weight[16] to Dr. Scott's opinion.[17] The ALJ gave great

---

[10]Admin. Rec. at 19.

[11]Admin. Rec. at 21-22.

[12]Admin. Rec. at 21-22.

[13]Alisabeth Thurston-Hicks, M.D., examined plaintiff on October 11, 2017. Dr. Thurston-Hicks opined that "[d]ue to her cognitive problems, despite her sociability, I believe she has very poor capacity to reason and make occupational, personal and social adjustments. I do not see her as capable of managing funds in her own best interest at this time." Admin. Rec. at 1205.

[14]Admin. Rec. at 23. Dr. Clifford's 2017 opinion is discussed in detail below.

[15]Admin. Rec. at 24. Dr. Weiss' opinions are discussed in detail below.

[16]Admin. Rec. at 23-24.

[17]On April 8, 2016, David T. Scott, Ph.D., opined that plaintiff had no restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in
(continued...)

weight to Dr. Buechner's opinion.[18]  And, the ALJ considered the lay testimony of Rhiannon Haile[19] but found that it was "not consistent with the objective medical evidence."[20]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[21]

At step five, the ALJ found that "there are jobs that exist in significant number in the national economy that the claimant can perform[,]" including working as a laundry worker, a store laborer, a kitchen helper, or an industrial cleaner.[22]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from August 1, 2015, through the date of this decision. . . ."[23]

---

[17](...continued)
maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration.  Admin. Rec. at 248.  Dr. Scott opined that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and interact appropriately with the general public.  Admin. Rec. at 249-250.  Dr. Scott opined that plaintiff "retains the ability to complete basic and most detailed tasks.  She will likely do best in a low-stress work setting that does not require frequent interaction with others."  Admin. Rec. at 251.

[18]Admin. Rec. at 24-25.  Dr. Buechner's opinion is discussed in detail below.

[19]Haile, plaintiff's daughter, completed a third-party function report on February 16, 2016.  Admin. Rec. at 548-554.

[20]Admin. Rec. at 23.

[21]Admin. Rec. at 25.

[22]Admin. Rec. at 25-26.  This finding was based on the testimony of the vocational expert who testified at the fourth administrative hearing.  Admin. Rec. at 99-101.

[23]Admin. Rec. at 26.

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in rejecting Dr. Clifford's March 2017 opinion. On March 8, 2017, Dr. Clifford opined that plaintiff was not significantly impaired in her ability to understand and remember short and simple instructions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of

neatness and cleanliness; was moderately impaired as to her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was markedly impaired as to her ability to remember locations and work-like procedures, understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with and proximity of others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[24]

    Dr. Clifford was a treating physician. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may

---

[24]Admin. Rec. at 820-821.

not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Clifford's opinion was contradicted by Dr. Buechner's and Dr. Scott's opinions; and so, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Clifford's opinion.

The ALJ gave little weight to Dr. Clifford's March 2017 opinion because it was "not consistent with the objective findings in his treatment notes."[25] By way of example, the ALJ cited to plaintiff's mental status exam from November 10, 2016.[26] Plaintiff argues that this was not a legitimate reason for the ALJ to reject Dr. Clifford's opinion.

On November 10, 2016, plaintiff's mental status exam showed that she was

> "[a]lert and oriented in all spheres. Eye contact is good. Develops good rapport with examiner. Dress and grooming are casual and appropriate to the environment. Speech is regular in rate, rhythm, tone and prosody. Language use is normal without slurring or pressure. No tics, tremors, or adventitious movements present. There is no evidence of psychomotor slowing or agitation. Mood is described as: "I cannot get it together to do anything except take care of the kids when I have them[.]" Affect is congruent to the stated mood, mildly restricted. Thought process is linear, logical and goal directed. Thought content is without suicidal ideation, intent or plan, which were specifically queried. There is no evidence of homicidal ideation, intent or plan, which were also specifically queried. The patient does not report perceptual distortions of any kind, and there is no evidence of attention to internal stimuli. The pt does not give evidence of delusions. The pt is not paranoid. The pt's memory

---

[25]Admin. Rec. at 23.

[26]Admin. Rec. at 23.

and cognition are within normal limits by confrontation, though formally not tested. The pt's judgment is good, and insight is within normal limits. The pt does not give evidence of impulsivity during the exam. The patient does not describe the presence of pain at this interview.[27]

Although an ALJ may reject a medical opinion if it is inconsistent with the objective medical evidence, Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), this was not a legitimate reason to reject Dr. Clifford's opinion. As the ALJ pointed out, plaintiff had a generally normal mental status exam on November 10, 2016. In fact, plaintiff's mental status exam at each of more than 60 appointments with Dr. Clifford was exactly the same as her November 10, 2016 exam, except each time plaintiff described her mood differently. But, the mental status exam results were not the only objective evidence in Dr. Clifford's treatment notes. For example, on November 10, 2016, D. Clifford noted that he was seeing plaintiff for "[c]ontinued medical management of PTSD, including Prozac 80 mg daily, Ambien and prazosin for sleep and nightmare management, and Xanax XR 4 mg daily for panic and anxiety management."[28] Dr. Clifford's assessment included that "[s]ituational problems continue to be constant and I provide support. We work on refining what she can do and what she cannot do. I provide strong support and encouragement as we make these boundaries."[29] This is also objective evidence. As the Ninth Circuit has pointed out,

---

[27]Admin. Rec. at 1076.

[28]Admin. Rec. at 1075.

[29]Admin. Rec. at 1076.

"[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). While mental status exams are objective evidence, they are not the only objective evidence contained in Dr. Clifford's treatment notes. The ALJ focused on plaintiff's mental status exams and ignored the other objective medical evidence in Dr. Clifford's treatment notes. While plaintiff did in fact have essentially normal mental status exams, Dr. Clifford's notes contained other objective evidence that is consistent with his opinion.

Moreover, the ALJ ignored Dr. Clifford's explanation as to why plaintiff had seemingly normal mental status exams, yet he still felt she had significant limitations. Dr. Clifford testified that

> [t]he mental status exam in psychiatry paints a pretty low bar. It's the bar, can they leave my office without a custodian. In a supported environment where I'm her therapist and we know each other very well, it would be expected that elevated anxiety symptoms, language use problems, obvious memory deficits wouldn't be present because we're in a circumstance where she's at rest. We've had an hour to . . . talk. And it is true that this patient has the ability in situations . . . where there's sufficient support, to be able to exercise reasonable judgment and make choices that are in [her] best self interest.[30]

Dr. Clifford testified, however, that "[i]n situations of increased emotional tone," plaintiff would "experience difficulties in formulating, giving good answers, giving concise answers

---

[30]Admin. Rec. at 162-163.

-11-

that pertain to the question that you asked, being able to manage the emotional environment, being able to recall facts."[31] Dr. Clifford testified that his "concern for her in terms of being able to work or compose herself in situations where there's a lot of stress, even in stores and . . . other public settings [is] that she's going to display inappropriate emotionality, not be able to state her case in a way that's either circumspect or rapid enough[,] that she's going to forget things and not organize tasks appropriately."[32] The ALJ did not indicate that she considered this explanation and rejected it. Rather, the ALJ did not even mention this explanation. Given the ALJ's focus on plaintiff's mental status exam, she should have addressed Dr. Clifford's explanation and set out her reasons for rejecting it. It was error for the ALJ to focus on only one portion of the objective evidence in Dr. Clifford's treatment notes and to ignore his explanation as to how plaintiff could have normal mental status exams but still be significantly limited by her PTSD.

Plaintiff next argues that the ALJ erred as to Dr. Weiss' opinions. At the second administrative hearing, Dr. Weiss testified that plaintiff had "a moderate level of dysfunction in understanding, remembering, and applying information[,]" marked limitations in her ability to interact with others, marked limitations as to concentration, persistence, or pace; and a moderate level of dysfunction as to the ability to adapt and manage one's self.[33] At the

---

[31]Admin. Rec. at 163.

[32]Admin. Rec. at 164.

[33]Admin. Rec. at 204-205.

third administrative hearing, Dr. Weiss testified that plaintiff had moderate limitations as to her ability to understand, remember, or apply information; marked limitations in her ability to interact with others; marked limitations as to concentration, persistence, or pace; and moderate limitations as to managing one's self.[34] Dr. Weiss also testified that plaintiff met "the listing under 12.15, posttraumatic stress disorder."[35]

The ALJ gave Dr. Weiss' opinions little weight because they were "not consistent with the objective medical evidence."[36] By way of example, the ALJ cited to a January 5, 2017, mental status exam.[37] As discussed above, plaintiff's mental status exams were the same at each of her visits with Dr. Clifford except for her description of her mood. And, these exams, including the January 5, 2017 exam, did show, as the ALJ noted, that plaintiff "was alert and oriented in all spheres[,]" "had good eye contact and developed rapport with the examiner[,]" had a mildly restricted affect, had memory and cognition within normal limits, had good judgment and her insight was within normal limits.[38] But, there are the same problems as to Dr. Weiss' opinions as there is with Dr. Clifford's opinion. The ALJ focused on plaintiff's mental status exams while ignoring the other objective evidence in Dr. Clifford's treatment notes, and the ALJ ignored Dr. Clifford's explanation as to why plaintiff

---

[34]Admin. Rec. at 140.

[35]Admin. Rec. at 140.

[36]Admin. Rec. at 24.

[37]Admin. Rec. at 1106-1108.

[38]Admin. Rec. at 24.

had essentially normal mental status exams. In short, the ALJ erred as to Dr. Weiss' opinions for the same reasons she erred as to Dr. Clifford's opinion.

Finally, plaintiff argues that the ALJ erred in giving Dr. Buechner's opinion great weight. Dr. Buechner testified at the final administrative hearing as a medical expert. She testified that plaintiff had moderate limitations as to understanding, remembering, or applying information; moderate limitations as to her ability to interact with others; moderate to marked limitations as to concentration, persistence, or pace; and moderate limitations as to adapting or managing oneself.[39] Dr. Buechner also testified that plaintiff did not meet the "paragraph C" criteria.[40] Dr. Buechner testified that plaintiff's PTSD did not meet or equal Listing 12.15.[41] Dr. Buechner testified that plaintiff would have difficulties with "changes to routine, or those situations which would create either specific triggers, or high stress situations."[42] Dr. Buechner also testified that plaintiff would find "high productivity requirements with a large number of people around, such as a factory floor . . . stressful."[43] Dr. Buechner testified, however, that "a low stress job, with only occasional decision making

---

[39] Admin. Rec. at 76-78.

[40] Admin. Rec. at 78.

[41] Admin. Rec. at 78.

[42] Admin. Rec. at 79.

[43] Admin. Rec. at 79.

or changes in the work setting . . . would be reasonable."[44] She also testified that plaintiff "would be able to manage occasional interaction with the public" and occasional contact with co-workers, but no tandem tasks.[45] Dr. Buechner also testified that plaintiff should not do tandem tasks with supervisors.[46]

The ALJ gave Dr. Buechner's opinion great weight because it was "consistent with the objective medical evidence[,]" because she "had the opportunity to review the longitudinal record at the hearing level," and because she "is familiar with Social Security rules and regulations."[47] Plaintiff argues that the ALJ erred in giving Dr. Buechner's opinion great weight for several reasons.

First of all, plaintiff argues that it is not at all clear why the ALJ even called Dr. Buechner to testify at the fourth hearing, given that Dr. Weiss had already testified at the second and third administrative hearings. If, as the Social Security regulations provide, the "agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation[,]" then plaintiff argues that Dr. Weiss' testimony should have been sufficient. 20 C.F.R. § 404.1513a(b)(1). But, the ALJ is not precluded from calling a medical expert to testify at a hearing simply because the ALJ had called a medical expert to testify at a prior hearing.

---

[44] Admin. Rec. at 80.

[45] Admin. Rec. at 80-81.

[46] Admin. Rec. at 81.

[47] Admin. Rec. at 25.

Secondly, plaintiff questions how Dr. Buechner's opinion could be consistent with the objective medical evidence, given that this case involves a mental impairment and Dr. Buechner never observed or treated plaintiff. But, Dr. Buechner's opinion was consistent with plaintiff's generally normal mental status exams. It just was not necessarily consistent with the other objective evidence in Dr. Clifford's treatment notes.

Thirdly, while plaintiff does not dispute that Dr. Buechner had an opportunity to review the longitudinal record, she points out that so did Dr. Clifford. Plaintiff argues that the ALJ did not explain how Dr. Buechner could have possibly been more familiar with plaintiff's medical records than Dr. Clifford was. But, it was not improper for the ALJ to note that Dr. Buechner had reviewed the longitudinal record, given that she had in fact done so.[48]

Finally, plaintiff argues that there is no evidence that Dr. Clifford was not familiar with the Social Security rules and regulations. But that does not mean that it was improper for the ALJ to note that Dr. Buechner was familiar with the Social Security rules and regulations.

To a large extent, plaintiff's arguments as to Dr. Buechner are just another way of plaintiff arguing that the ALJ should have given Dr. Clifford's and Dr. Weiss' opinions more weight. The issue here is whether the ALJ erred in rejecting Dr. Clifford's and Dr. Weiss' opinions, not whether the ALJ erred in giving Dr. Buechner's opinion too much weight.

---

[48] Admni. Rec. at 58.

And, as discussed above, the ALJ did err in rejecting Dr. Clifford's and Dr. Weiss' opinions.

Because the ALJ erred in rejecting their opinions, the court must consider whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

As for Dr. Weiss' opinions, there would be no need for further proceedings, given that he testified that plaintiff met Listing 12.15. Plaintiff would be disabled if his opinion were credited as true. As for Dr. Clifford's opinion, there would also be no need for further proceedings. Dr. Clifford testified that plaintiff had marked limitations as to concentration,

persistence, or pace;[49] and the vocational expert testified that there would be no work for a person who could not "sustain sufficient concentration, persistence or pace to get through a full eight-hour work day, five days a week, 40 hour work week or equivalent schedule."[50] If Dr. Clifford's opinion were credited as true, plaintiff would be disabled.

Defendant, however, suggests that further proceedings are necessary because plaintiff's felony conviction might have some bearing on her eligibility for benefits. The social security regulations provide that "[i]n determining whether you are under a disability, we will not consider any physical or mental impairment, or any increase in severity (aggravation) of a preexisting impairment, which arises in connection with your commission of a felony after October 19, 1980, if you are subsequently convicted of this crime." 20 C.F.R. § 404.1506(a). But, the ALJ expressly found that plaintiff's "symptoms were [not] due solely to the legal charges she faces[,]"[51] and Dr. Clifford opined that the severity of plaintiff's symptoms was not increased by her legal issues.[52] In addition, a claimant is not eligible to receive benefits while incarcerated. 20 C.F.R. § 416.211(a)(1). But, there is no evidence in the record that plaintiff was ever incarcerated during the relevant time.[53] Thus,

---

[49]Admin. Rec. at 820-821.

[50]Admin. Rec. at 101.

[51]Admin. Rec. at 21.

[52]Admin. Rec. at 1207-1208.

[53]Plaintiff testified that she was sentenced to probation and restitution. Admin. Rec. at 65.

no further proceedings are necessary because of plaintiff's felony conviction. A remand for an award of benefits is appropriate in this case.

## Conclusion

Based on the foregoing, the final decision of defendant is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 17th day of June, 2019.

/s/ H. Russel Holland
United States District Judge